UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                        Plaintiff,                        Case Number 16-20143

v.                                                  Honorable David M. Lawson

STEPHEN BROWN,

                        Defendant.

_____/

## ORDER DENYING SECOND MOTION TO REDUCE SENTENCE

Defendant Stephen Brown has filed a renewed motion through counsel asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. The Honorable Avern Cohn sentenced Brown to 204 months in prison after Brown pleaded guilty to one count of using of interstate facilities in the commission of a murder-for-hire. Brown presents a single argument for a sentence reduction: that he is at a high risk of severe illness from COVID-19. However, in light of the availability of vaccines, that rationale no longer provides an extraordinary and compelling reason for a sentence reduction, especially for an individual with Brown's medical profile. *See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). Moreover, the factors outlined in 18 U.S.C. § 3553(a), particularly the seriousness of his offenses, counsel against Brown's release. His motion to reduce his sentence will be denied.

I.

Defendant Stephen Brown is currently serving a 17-year sentence for his role in the 2015 murder of Devin Wallace. The factual background of the case is summarized in the Sixth Circuit's opinion affirming the conviction of Brown's co-defendant, Andre Watson. *United States v. Watson*, 852 F. App'x 164, 166-67 (6th Cir.), *cert. denied*, 141 S. Ct. 2614 (2021). Brown served

as an "enforcer" and drug dealer for defendant Deaunta Belcher, a drug dealer who had a "dope house" on Beniteau Street in Detroit, Michigan.   Belcher joined a car fraud scheme run by defendants Darnell Bailey and Wallace, which provided fraudulent personal information to drug dealers so they could purchase cars from car dealerships.   Belcher and Wallace, however, did not get along.   Eventually, Belcher offered Watson and Brown a house and a car in exchange for killing Wallace.   Brown and Watson went to a strip club in Dearborn to kill Wallace, but he escaped. *Ibid.*

On September 11, 2015, Bailey and Wallace had an intense argument at a car dealership. Belcher and Bailey then met at a gas station and discussed having Wallace killed.   Belcher called Brown and Watson and told them that Wallace was going to be downtown at a previously scheduled meeting.   Later, Belcher called back and told Brown that the location for the meeting was the They Say restaurant.   Brown, Watson, and a third man, Billy Chambers, drove towards the restaurant.   *Ibid.*

Bailey was the first to arrive and, at some point, Wallace called to say that he was outside in his car.   Bailey went to Wallace's car and began talking to him.   Belcher arrived with his daughter, but they left after a short time.   Brown and Watson then received a call from Belcher letting them know to look for Bailey because he was standing outside of Wallace's car talking to him.   *Ibid.*   Chambers drove Brown and Watson to Wallace's vehicle, where Brown fired twice before his gun jammed.   Watson then got out of the car and shot Wallace at close range. Responding law enforcement found Wallace dead in his car; he was shot nine times, including six times in his head.   The shooting was captured on the restaurant's security camera.

As part of Rule 11 plea and cooperation agreements, Brown pleaded guilty to one count of use of interstate facilities in the commission of a murder-for-hire, in violation of 18 U.S.C. §

- 2 -

1958(a).  Judge Cohn imposed a 204-month sentence to run concurrently with any undischarged term of imprisonment in the Michigan Department of Corrections.  Brown began serving his federal sentence on April 12, 2019.  He testified at the jury trial of Belcher and Watson, who were convicted on all counts.

Brown has a prior criminal history: four adult felony criminal convictions for crimes related to an attempted theft of a motor vehicle, larceny from a motor vehicle, breaking and entering a building, and fleeing or evading police.  He committed several of the felonies while on probation, from which he also has repeatedly absconded.

Brown states in his motion states that he is incarcerated at USP Coleman in Sumterville, Georgia; however, the docket and Brown's prison records indicate he is incarcerated at USP Atlanta.  But as of March 2022, he has been housed at the Midland County Jail on a federal writ so that he could testify at a co-defendant's post-conviction motion hearing.  USP Atlanta currently houses 882 inmates.  As of May 23, 2022, no inmates or staff members currently were infected with COVID-19, two inmates had died from COVID-19, and 305 inmates had been infected and recovered from the virus.  Additionally, 782 inmates (including Brown) and 293 staff members have been vaccinated.  *See* https://www.bop.gov/coronavirus/.

Brown is a 32-year-old African American male.  His medical records confirm that he suffers from HIV, hypertension, and asthma.  2019 Med. Records, ECF No. 368-2, PageID.4796-97.  He takes several medications to control these conditions, including antiretrovirals and Albuterol.  2021 Med. Records, ECF No. 368-4, PageID.5081-82.  As a result, he is asymptomatic for HIV: his viral load is undetectable and his CD4 white blood cell count consistently is within 90 percent of the normal range.  *See, e.g.*, 2020 Med. Records, ECF No. 368-3, PageID.4994, 5018, 5022; 2019 Med. Records ECF No. 368-2, PageID.4935.  His asthma also remains mild-to-

moderate.  Brown's lungs have been clear, he has not exhibited shortness of breath or other respiratory distress, and his oxygen saturation rate is consistently in a 96 to 100 percent range. *See, e.g.*, 2021 Med. Records, ECF No. 368-4, PageID.5036, 5044, 5067; 2019 Med. Records, ECF No. 368-2, PageID.4797, 4894.  However, Brown's medical records indicate that his asthma is "moderate persistent," and he reports needing to use his inhaler with greater frequency than prescribed.  *See* 2021 Med. Records, ECF No. 368-4, PageID.5035, 5063, 5076.

Brown contends that he has made some efforts to rehabilitate himself in prison. He has taken part in a Residential Drug Abuse Program and Business Management Program.  However, he explains that he has not been able to take full advantage of the BOP's rehabilitation, vocational, and educational programs because he was placed in a Special Housing Unit due to safety concerns. He has received at least three disciplinary sanctions while imprisoned, two for refusing to obey prison rules — by possessing a cellular-phone charger and a "non-hazardous tool," and refusing to go to the yard — and once for assaulting a correctional officer (without causing serious injury). Disciplinary Data, ECF No. 368-5, PageID.5105.  If released, Brown plans to live with his mother in Louisville, Kentucky.  *Id.* at PageID.4637-38.  He reports that his mother will provide him with financial support and housing, assist him with enrolling in a restart program for ex-offenders, and help him find a job at UPS, where she works.  *Ibid.*

Brown first filed a motion for compassionate release on October 15, 2020, when the case had been assigned to another judge.  After the case was transferred, this Court denied the motion without prejudice for lack of exhaustion of prison remedies but appointed the federal community defender to represent him.  Brown then requested a reduction in sentence from the acting warden at USP Atlanta based on his underlying health issues.  The acting warden denied his request on

October 24, 2020.  Brown then filed a renewed motion for compassionate release on February 6,

2022.

      By now it is well understood that, generally, "a federal court 'may not modify a term of

imprisonment once it has been imposed,'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020)

(quoting 18 U.S.C. § 3582(c)), and that this "rule comes with a few exceptions, one of which

permits compassionate release," *ibid.*  The request for such relief must be presented by a motion

filed in federal court, either by the Director of the Bureau of Prisons, 18 U.S.C. § 3582(c)(1)(A),

"[o]r it may come through a motion filed by the inmate after he has 'fully exhausted all

administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

[prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden

of the [prisoner]'s facility, whichever is earlier,'" *Alam*, 960 F.3d at 832 (quoting 18 U.S.C. §

3582(c)(1)(A)).

      Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors

set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and

compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has

'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. §

3582(c)(1)(A)(i), (ii)).  Brown relies on subparagraph (i) of the statute.  Under that provision, the

Court can order a reduction of a sentence, even to time served, by following a procedure that the

court of appeals has distilled into three steps.  *First*, consider whether "extraordinary and

compelling reasons warrant such a reduction."  *Second*, determine if the "reduction is consistent

with applicable policy statements issued by the Sentencing Commission."  *Third*, "consider[] the

factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*,

978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute.  The commentary adds gloss, which does not have the force of law.  *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").  That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP.  *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

Last year, the court of appeals took the explanation a step further.  In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'"  984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)).  It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions."  *Id.* at 519-20.  It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative."  *Ibid.*  However, the defendant still must satisfy the other two requirements, and his "failure to meet any one of those

criteria" will result in the denial of his motion.  *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021).

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.  The government contends, however, that the defendant cannot demonstrate extraordinary or compelling reasons justifying immediate release, and that the factors in 18 U.S.C. §3553(a) do not favor immediate release.

B.

Addressing the first element — extraordinary and compelling reasons — Brown contends that he suffers from a heightened risk of developing severe complications from COVID-19 because he suffers from HIV, diabetes, and hypertension.  He does not argue that any other circumstances warrant his release.

The Sixth Circuit has narrowed significantly the circumstances in which the COVID-19 pandemic can provide extraordinary and compelling reasons for a sentence reduction.  It has allowed that the combination of the pandemic, rehabilitation efforts, *and* a nonretroactive change in sentencing law may constitute extraordinary and compelling circumstances warranting a prisoner's compassionate release.  *United States v. McCall*, 20 F.4th 1108, 1109 (6th Cir. 2021).  However, it also has held that, in light of the availability of COVID-19 vaccinations and absent extenuating circumstances, the pandemic *alone* is not is an extraordinary and compelling reason for a sentence reduction.  *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022); *Lemons*, 15 F.4th at 751.

Brown has not shown that "extenuating circumstances" exist in his case.  Brown is fully vaccinated, having received one dose of the Janssen vaccine.  *See* Stay Up to Date with Vaccines,

Ctrs. for Disease Control & Prevention (Oct. 14, 2021), https://perma.cc/S9HN-AR4S.  Although the Centers for Disease Control and Prevention recommends that individuals who receive the Janssen vaccine receive a booster dose, *ibid*., the court of appeals has required prisoners to "present a compelling reason justifying the failure to be vaccinated despite access to the vaccine" in order to show that the pandemic presents an extraordinary and compelling reason for a sentence reduction, *Lemons*, 15 F.4th at 751; *see also United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release."); *United States v. Brownlee*, No. 21-2591, 2022 WL 35404, at *2 (6th Cir. Jan. 4, 2022) (denying compassionate release to a prisoner who did not justify his refusal to receive the COVID-19 vaccine).  Brown has not provided any explanation for why he has not received a booster shot and he has not argued that his vaccination status provides an extraordinary and compelling reason for sentencing relief.  *See* Stay Up to Date with Vaccines, Ctrs. for Disease Control & Prevention (Oct. 14, 2021), https://perma.cc/S9HN-AR4S**.**  It seems to be true that a fully vaccinated and boosted person is not entirely immune from a COVID infection.  But it has been demonstrated that the current COVID variant is much less pathogenic than earlier variants, and fully vaccinated individuals experience much milder symptoms than their non-vaccinated counterparts even when incurring breakthrough infections.

Nor has Brown demonstrated that his medical conditions have worsened since his sentencing.  *See McKinnie*, 24 F.4th at 588 ("[A]s McKinnie has offered no evidence as to how [his medical] conditions have worsened since his sentencing, he fails to demonstrate how they justify a sentence reduction.").  To the contrary, Brown's medical records suggest that his

conditions are stable and successfully have been controlled or suppressed by medication since his incarceration.

It also is not clear that Brown's medical conditions place him at high risk of contracting COVID-19. It is not known whether individuals with HIV are at a greater risk of infection, particularly individuals like Brown who exhibit CD4 levels within a normal range. *See Guidance for COVID-19 and People with HIV*, HIV.gov (Feb. 22, 2022), https://perma.cc/ZGR8-5XJM. And although the government discusses Brown's asthma diagnosis in its response, Brown does not once mention his asthma in his motion for compassionate release. There is also no evidence that Brown suffers from diabetes, despite making this claim in his motion. *See, e.g.*, 2021 Med. Records, ECF No. 368-4, PageID.5050; 2020 Med. Records, ECF No. 368-3, PageID.5025.

The degree of the vaccine's efficacy is relevant to the probability of whether the defendant might contract an infection from the coronavirus in his present situation and, in turn, whether extraordinary and compelling circumstances warrant an inmate's immediate release. In this case, that probability appears to be remote. Recent reports indicate that the probability of infection at USP Atlanta now is very low, with no active cases among inmates. Further, even as the incidence of infection at USP Atlanta has declined, the probability of a future severe outbreak also has been diminished by the BOP's robust deployment of vaccines, which so far have been administered fully to 782 inmates and 293 staff members at the prison. Although Brown justifiably is concerned about the health risks posed by his incarceration in this pandemic era, *see Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020), the likelihood of a severe outbreak at USP Atlanta is significantly diminished.

Brown has not demonstrated that extraordinary and compelling reasons justify his early release.

C.

Because the defendant has not demonstrated extraordinary and compelling reasons to reduce his sentence, the Court need not discuss the relevant section 3553(a) factors. *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021). Nevertheless, consideration of the section 3553(a) factors counsels against Brown's release as well. Brown's crime was serious — he pleaded guilty to involvement with a murder. Brown has served just over three years of his 17-year sentence; reducing his sentence by four-fifths would not promote respect for the law or provide a just punishment for his crimes. And Brown's record of rehabilitation is unremarkable. Brown repeatedly has been cited for disobeying BOP rules and, once, for assaulting a BOP officer. Although Brown has completed a drug treatment program and an educational course, he admits that he has not taken advantage of other rehabilitative opportunities. Mot., ECF No. 354, PageID.4635. There is no other evidence in the record that suggests that Brown has reformed while in prison. Brown therefore has failed to establish that that the section 3553(a) factors support relief in his case.

III.

Brown has exhausted his administrative remedies. However, again, he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's second motion for compassionate release (ECF No. 354) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  May 23, 2022

- 10 -